**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| FORCHT BANK, N.A, KENTUCKY BANKERS ASSOCIATION and BANK POLICY INSTITUTE,<br>            *Plaintiffs*,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU and RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau,<br>            *Defendants,*<br><br>FINANCIAL TECHNOLOGY ASSOCIATION,<br>            *Intervenor-Defendant.* | Case No. 5:24-cv-304-DCR |

**MEMORANDUM OF AMICUS CURIAE PUBLIC CITIZEN
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTEREST OF AMICUS CURIAE[1]**

Amicus curiae Public Citizen is a nonprofit consumer advocacy organization with members

in all fifty states. Public Citizen regularly appears before Congress, administrative agencies, and

courts to advocate for laws and policies that protect consumers, workers, and the general public.

Because Public Citizen frequently takes a role in proposing, defending, or challenging agency

regulations, Public Citizen has a strong interest in the proper application of the Administrative

---

[1] This amicus curiae memorandum was not authored in whole or part by counsel for a party, and no one other than amicus curiae or its counsel made a monetary contribution to the preparation or submission of this memorandum.

Procedure Act (APA), and it often participates as a party or as amicus curiae in cases that involve the APA.

**INTRODUCTION**

In what appears to be a procedural innovation unprecedented in the annals of federal law, the defendant federal agency in this case has moved for summary judgment against itself. Amicus has been unable to find any other instance of such a motion, and the agency's litigation posture raises serious concerns about its compliance with the fundamental requirements of the Administrative Procedure Act (APA). Because the Financial Technology Association has intervened to defend the agency rule at issue, the procedural irregularity of the agency's request need not bar this Court's consideration of the merits of *Plaintiffs'* motion. To guard against executive branch gamesmanship, however, the Court should decline to afford any deference to the agency's arguments in this litigation.

**BACKGROUND**

As part of the Dodd-Frank Consumer Financial Protection Act, Congress empowered the Consumer Financial Protection Bureau (CFPB) to make rules requiring banks to "make available to a consumer, upon request, information … concerning the consumer financial product or service" that the bank provided to the consumer, "including information relating to any transaction, series of transactions, or to the account including costs, charges, and usage data." 12 U.S.C. § 5533(a). Congress further instructed the CFPB to prescribe "by rule … standards … to promote the development and use of standardized formats for information, including through the use of machine readable files, to be made available to consumers under this section." *Id.* § 5533(d). In a separate definitional section, Congress defined the term "consumer" to mean "an individual or an agent, trustee, or representative acting on behalf of an individual." *Id.* § 5481(4).

2

The process of promulgating a rule to comply with that statutory requirement began with a Request for Information published in the Federal Register in November 2016. *See* Request for Information Regarding Consumer Access to Financial Records, 81 Fed. Reg. 83806 (Nov. 22, 2016). It continued with a CFPB-hosted symposium on consumer access to financial records in July 2020, *see* Required Rulemaking on Personal Financial Data Rights, 89 Fed. Reg. 90838, 90841 n.17 (Rule), and an Advance Notice of Proposed Rulemaking in November 2020, *see* Consumer Access to Financial Records, 85 Fed. Reg. 71003 (Nov. 6, 2020). In 2022, the CFPB issued an "Outline of Proposals and Alternatives under Consideration" for the required rulemaking pursuant to the Small Business Regulatory Enforcement Fairness Act, and in 2023 it convened a panel and issued a report under that Act. *See* Final Rule, 89 Fed. Reg. 90838, 90841 (Nov. 18, 2024). During the rulemaking process, CFPB staff met with and received input from the Consumer Advisory Board, the Community Bank Advisory Council, and the Credit Union Advisory Council, as well as staff from the Board of Governors of the Federal Reserve System, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the National Credit Union Administration, the Federal Trade Commission, the United States Departments of Agriculture, Treasury, Justice, and Commerce, the Federal Housing Finance Agency, and state agencies. *Id.* at 90841–42.

The CFPB published a notice of proposed rulemaking on October 19, 2023. *See* Required Rulemaking on Personal Financial Data Rights, 88 Fed. Reg. 74796 (Oct. 21, 2023). It received 11,145 comments on the proposed rule,[2] of which approximately 290 were unique, detailed comment letters. *See* Final Rule, 89 Fed. Reg. at 90842. The commenters included banks, credit unions, nondepository entities, data aggregators, trade associations, standard-setting bodies,

---

[2] *See* https://www.regulations.gov/document/CFPB-2023-0052-0001.

consumer advocates, researchers and research institutions, members of Congress, government agencies, law firms, and individuals. *Id.* The CFPB issued the final Rule on October 22, 2024,[3] and published it in the Federal Register on November 18, 2024. *Id.* at 90838.

Plaintiffs filed this case on October 22, 2024, *see* ECF 1, and filed an amended complaint on November 18, 2024, *see* ECF 22. The CFPB answered the amended complaint on December 27, 2024, asserting as an affirmative defense that this Court lacks subject matter jurisdiction and denying, on each of the ten counts in the amended complaint, "that Plaintiffs are entitled to the relief they seek or to any other relief in this action." ECF 29 at 1, 26–39.

Following the change in administration, the CFPB's new leadership sought to stay the briefing schedule—and the effective date of the Rule—first by thirty and then by sixty days, to allow time to review the CFPB's position. *See* ECF 40, 42. The Court granted the Financial Technology Association's motion to intervene as a defendant on May 14, 2025. ECF 56. On May 23, 2025, the CFPB filed a status report informing the Court that "Bureau leadership has determined that the Rule is unlawful and should be set aside." ECF 57 at 2. A week later, the CFPB moved for summary judgment against itself. The text of the CFPB's motion purports to seek "an order granting summary judgment *in Defendants' favor* on the grounds that Defendants are entitled to summary judgment as a matter of law." ECF 58 at 1 (emphasis added). In fact, the CFPB seeks an order vacating its own Rule on the grounds that it "exceeds the Bureau's statutory authority and is arbitrary and capricious," ECF 58-2.

---

[3]    *See*    https://www.consumerfinance.gov/rules-policy/final-rules/required-rulemaking-on-personal-financial-data-rights/

**ARGUMENT**

The Court should deny the CFPB's motion for summary judgment because the CFPB is not entitled to judgment against itself "as a matter of law." Fed. R. Civ. P. 56(a). The APA sets out the procedures necessary for an agency to promulgate, amend, or repeal a rule. 5 U.S.C. §§ 551(5), 553. The APA does not permit an agency to end-run those procedures by seeking summary judgment against itself. Moreover, the post-hoc arguments in the CFPB's summary judgment motion are inconsistent with the agency's statements in the rulemaking and warrant no deference.

**I.      The APA does not permit an agency to move for summary judgment to invalidate its own rule.**

The APA's procedural requirements for rulemaking apply equally to promulgating and repealing a rule. *See* 5 U.S.C. § 551(5) (stating that "'rule making' means agency process for formulating, amending, or repealing a rule"). If notice-and-comment rulemaking is required for an agency to issue a rule, the same procedure is thus necessary to rescind that rule. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 101 (2015) (stating "the D.C. Circuit correctly read [5 U.S.C. § 551(5)] to mandate that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance"); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (stating that the APA "make[s] no distinction … between initial agency action and subsequent agency action undoing or revising that action"). Agencies are, of course, "free to change their existing policies so long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox Television Stations*, 556 U.S. at 515–16.

To be sure, courts are not bound by the same procedural requirements as agencies. "Reviewing courts certainly have the power to vacate an agency action they find unlawful." *Sierra Club v. U.S. EPA*, 60 F.4th 1008, 1021 (6th Cir. 2023). But an agency cannot circumvent the strictures of the APA by seeking judgment against itself or even simply conceding that its rule is unlawful or otherwise invalid.

In some cases, agencies have asked for, and courts have granted, remand to the agency of a challenged rule for further consideration. In the typical case, the remand is *without* vacatur. Voluntary remand without vacatur can preserve judicial resources by allowing "agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete," *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993), or by allowing an agency to respond to "intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation," *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001). The *sine qua non* of voluntary remand, however, is the promise of further agency action: "In general, a voluntary remand request made in response to a party's APA challenge may be granted only when the agency intends to take further action with respect to the *original agency decision on review*." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017) (Kavanaugh, J.) (emphasis in original). That is, the agency must have committed to taking further action that will itself be subject to the APA's requirement of reasoned decision-making and eventually to the full panoply of judicial scrutiny under the APA.

By contrast, courts routinely reject agency requests that a court remand a challenged rule *with* vacatur as incompatible with the APA's procedural requirements. "Endorsing the practice of voluntary-remand-with-vacatur where there is no merits ruling would essentially turn courts into

6

the accomplices of agencies seeking to avoid [the APA's] statutory requirement" that agencies use the same procedures to repeal a rule as to promulgate it in the first place, "as it would allow agencies to repeal a rule merely by requesting a remand with vacatur in court." *In re Clean Water Act Rulemaking*, 60 F.4th 583, 595 (9th Cir. 2023). *See Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4 (D.D.C. 2009) (stating that "granting the Federal defendants' motion would wrongfully permit the Federal defendants to bypass established statutory procedures for repealing an agency rule" and "would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits"); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 136 (D.D.C. 2010) (same); *cf. also Arizona v. City & County of San Francisco*, 596 U.S. 763, 766 (2022) (Roberts, C.J., joined by Thomas, Alito, & Gorsuch, JJ., concurring) (noting that an agency's "tactic of 'rulemaking-by-collusive-acquiescence'" "allowed the Government to circumvent the usual and important requirement, under the Administrative Procedure Act, that a regulation originally promulgated using notice and comment … may only be repealed through notice and comment," and questioning "whether the Government's actions, all told, comport with the principles of administrative law." (quoting *City and County of San Francisco v. USCIS*, 992 F.3d 742, 744 (9th Cir. 2021) (VanDyke, J., dissenting)).

Here, the agency is not seeking remand without vacatur to allow further consideration under the APA. The agency is not even seeking a (disfavored) remand with vacatur. Rather, here, the agency is going a step further: It asks the court to vacate without remand, based on a ruling on the merits. The CFPB is thus attempting to repeal the Rule without undertaking the steps required by the APA, including by providing notice and an opportunity for public comment, and to insulate

7

its decision to do so from subsequent judicial review. The prospect of such procedural gamesmanship is sufficient reason for the Court to deny the CFPB's motion.

## II.    The CFPB's arguments against the Rule are not entitled to deference.

Even after the demise of *Chevron* deference, courts generally may treat an agency's position as "informative 'to the extent it rests on factual premises with [the agency's] expertise.'" *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024). "Such expertise has always been one of the factors which may give an Executive Branch interpretation particular 'power to persuade, if lacking power to control.'" *Id.* (quoting *Skidmore v. Swift Co.*, 323 U.S. 134, 130 (1944)). In many cases, "the 'interpretations and opinions' of the relevant agency, 'made in pursuance of official duty' and 'based upon … specialized experience,' 'constitute a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance,' even on legal questions." *Id.* at 388 (quoting *Skidmore*, 323 U.S. at 139–40). The Supreme Court has advised, however, that "[t]he weight of such a judgment in a particular case" will "depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id*. (quoting *Skidmore*, 323 U.S. at 140).

At the same time, "courts may not accept … counsel's *post hoc* rationalizations for agency action." *State Farm*, 463 U.S. at 50. Instead, "[i]t is well settled that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* (citing *SEC v. Chenery*, 332 U.S. 194, 196 (1947)). In *Skidmore* terms, the arguments of counsel in litigation are categorically distinct from the "body of experience and informed judgment" to which courts may look for guidance. 323 U.S. at 140; *see Council for Urological Interests v. Burwell*, 790 F.3d 212, 222

8

(D.C. Cir. 2015) (stating that "we look to what the agency said at the time of the rulemaking—not to its lawyers' post-hoc rationalizations").

That principle applies to the CFPB's post-hoc arguments in support of vacatur of its own rule. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *cf. Investment Co. Inst. v. Camp*, 401 U.S. 617, 628 (1971) ("Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands."). The rulemaking process in this case spanned several years, with extensive consultation between the CFPB and the relevant stakeholders and detailed consideration of thousands of public comments. The CFPB's "experience and informed judgment," reflected in the Final Rule thus can properly guide the Court's determination on the merits. But CFPB's post-hoc litigation arguments contradicting the agency's judgment as reflected in the Rule are entitled to no special solicitude. The Court should afford them no deference.

## CONCLUSION

This Court should deny the CFPB's motion for summary judgment, and it should afford no deference to the CFPB's arguments in the Court's consideration of Plaintiffs' motion for summary judgment.

July 7, 2025

Respectfully submitted,

/s/ Elizabeth Ahern Wells
Elizabeth Ahern Wells 90724
Burdge & Wells Law Office Co., LPA
8250 Washington Village Dr.
Dayton, Ohio 45458
Phone: (937) 432-9500
Fax: (937) 432-9503
Email: Beth@BurdgeLaw.com

*Attorney for Amicus Curiae*

*Of counsel:*
Cormac Early
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000